## ALEXANDER v. LUCAS, Collector of Internal Revenue.

District Court, W. D. Kentucky, at Louisville. March 9, 1927.

**Internal revenue ⬤⇒7(24)—Deduction to be made for income tax purposes from proceeds of life policies at maturity of term determined (Revenue Act 1918, § 213b, subd. 2 [Comp. St. § 6336⅛ff]).**

Plaintiff in 1899 took out two participating deferred dividend life policies, payable, with accumulations, at his option, at the end of 20 years, if he was then living. Payment of the ten premiums was completed in 1909, and at the end of the term in 1919 he received payment of the face of the policies, with accumulated dividends. *Held*, that the deduction for income tax purposes provided by Revenue Act 1918, § 213b, subd. 2 (Comp. St. § 6336⅛ff), was not limited to the amount of the premiums paid, but was the fair value of the policies on March 1, 1913, as invested capital; that such value was not measured by their then surrender value, which did not include dividends earned, but as the policies were then paid up, and plaintiff's life expectancy extended beyond the 20-year term, it was the then present value of the sum he would receive at the end of that term, computing the dividends to be earned in the ensuing 6 years at the same rate as earned in the past 14 years, which was less than expected or than actually earned.

At Law. Action by A. J. A. Alexander against Robert H. Lucas, collector of Internal Revenue for the District of Kentucky. Judgment for plaintiff.

Elwood Hamilton and Beckham, Hamilton & Beckham, all of Louisville, Ky., for plaintiff.

W. Sherman Ball, U. S. Atty., of Louisville, Ky., and A. W. Gregg, General Counsel, Bureau of Internal Revenue, and Edward H. Horton, Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

DAWSON, District Judge. This is a suit to recover income taxes for the year 1919, exacted of the plaintiff under a deficiency assessment, and paid by him under protest. A jury was waived, separate findings of facts and conclusions of law requested, and the case submitted on an agreed statement of facts and certain depositions. The record, as finally made up, presents the single question of what taxable gain, if any, was realized by the plaintiff in 1919, upon the cashing in by him of two insurance policies issued to him as of May 19, 1899.

These policies were issued by the New York Life Insurance Company and were each for the sum of $50,000. They were what are known as participating deferred dividend policies, and by their terms were to be fully paid up upon the payment of 10 annual premiums, each for the sum of $3,905, with a 20-year accumulation period. The premiums on the two policies totaled $78,100, and the payments thereon were completed on March 19, 1908. The 20-year accumulation period ended on the 19th day of May, 1919. The plaintiff was 24 years old at the time these policies were issued. In event of the death of the insured, the policies were payable to his estate. They were exactly alike, and they provided that, if the plaintiff should be living at the end of the accumulation period, he might exercise either of four enumerated options. The policies in this respect provide as follows:

"This insurance bond participates in surplus as hereinafter provided, but no dividend shall be apportioned to it before the end of the accumulation period. If the insured elects to continue this insurance bond beyond the accumulation period, under one of the two accumulation benefits first named below, no further dividend shall be apportioned to it before the end of each period of five years thereafter.

"The accumulation period of this insurance bond ends on the nineteenth day of May in the year nineteen hundred and nineteen. If the insured is living, and if the premiums have been duly paid to that date and not otherwise, the company will then apportion a dividend to the insured, who shall have the option of continuing, or discontinuing, this insurance under one of the following four accumulation benefits:

"(1) Receive an income of two thousand dollars and no cents per annum, during life (being equal to four per cent. on the initial amount of the insurance ($50,000), the first payment to be made on the nineteenth day of May, nineteen hundred and twenty, and receive the dividend converted into a life annuity, payable with the income as above, and continue this insurance bond without further payment of premiums (evidence of good health will not be required); or,

"(2) Receive the dividend, in cash, and receive an income for life payable as speci-

fied in the 'first benefit' and continue this insurance bond without further payment of premiums (evidence of good health will not be required); or,

"(3) Receive the entire cash value, as stated below, converted into an annual income during the life of the insured payable as provided in the 'first benefit' which income the company guarantees shall be not less than thirty-four hundred and seventy-four dollars and no cents, and discontinue this insurance bond; or,

"(4) Receive the entire cash value, as stated below, in cash, and discontinue this insurance bond.

"The company guarantees that the entire cash value of this insurance bond at the end of the accumulation period shall be fifty thousand dollars, and in addition the cash dividend then apportioned by the company.

"At the end of the accumulation period the company will send the insured a written statement, setting forth the results under each of the above accumulation benefits, and if the insured shall fail at that time to notify the company which benefit has been selected, the first benefit shall be considered selected."

Each policy also provided that, if the insured died at any time before the end of the tenth year after its issue, the beneficiary would be paid the sum of $50,000 in full satisfaction thereof. Each policy also contained a schedule of the amounts payable in event of death at any time between the end of the tenth year and prior to May 19, 1919, as follows:

| | |
|---|---|
| Eleventh year | $50,700 |
| Twelfth year | 52,700 |
| Thirteenth year | 54,800 |
| Fourteenth year | 57,000 |
| Fifteenth year | 59,300 |
| Sixteenth year | 61,650 |
| Seventeenth year | 64,150 |
| Eighteenth year | 66,700 |
| Nineteenth year | 69,350 |
| Twentieth year | 72,150 |

Each policy also contained provisions with reference to paid-up and extended insurance, as well as a schedule of loan values. The loan value schedule begins at the end of the third year, and is as follows:

| | |
|---|---|
| Third year | $ 7,950 |
| Fourth year | 10,600 |
| Fifth year | 13,500 |
| Sixth year | 16,750 |
| Seventh year | 20,350 |
| Eighth year | 24,350 |
| Ninth year | 28,600 |
| Tenth year | 30,600 |
| Eleventh year | 32,700 |
| Twelfth year | 34,900 |
| Thirteenth year | 37,300 |
| Fourteenth year | 39,700 |
| Fifteenth year | 42,250 |

| | |
|---|---|
| Sixteenth year | 44,950 |
| Seventeenth year | 46,500 |
| Eighteenth year | 48,150 |
| Nineteenth year | 49,900 |

The policies contained no cash surrender value schedule, but it is admitted that the loan value schedule had the same effect as a cash surrender value, because the insured could borrow the scheduled loan value, and, if he did not desire to repay it, he could surrender the policy and would owe the insurance company nothing.

Subsequent to May 19, 1919, the end of the accumulation period, plaintiff elected to exercise the fourth option heretofore set out, and upon such election the insurance company paid to him on each of the policies $50,000 as the face thereof and $10,398.50 as accumulations, or a total on the two policies of $120,797.

The Commissioner of Internal Revenue found that under section 213 of the Revenue Act of 1918 (Act Feb. 24, 1919), being Comp. St. § 6336⅛ff, and under article 72 (b) of Regulation 45 (1920 Edition) of the Treasury Department, the taxable gain realized by the plaintiff should be determined by deducting from the sum of $120,797 the sum of $78,100, representing the return, without interest, of the premiums actually paid by the plaintiff on these policies. The plaintiff contends that the only taxable gain realized by him on the transaction was the difference between the sum of $120,797, the amount received by him upon surrender of his policies in 1919, and the fair value of these policies as of March 1, 1913.

The pertinent part of section 213 of the Revenue Act of 1918, declares that the term gross income—

"(b) Does not include the following items, which shall be exempt from taxation under this title: * * *

"2. The amount received by the insured as a return of premium or premiums paid by him under life insurance, endowment, or annuity contracts, either during the term or at the maturity of the term mentioned in the contract, or upon surrender of the contract."

Article 72 (b) of Regulation 45 (1920 Edition) provides:

"During his life only so much of the amount received by an insured under life, endowment or annuity contracts as represents a return without interest of premiums paid by him therefor is excluded from his gross income."

Whatever value these policies had on March 1, 1913, must be taken into consideration in determining what taxable gain was

realized by the plaintiff upon their surrender in 1919. Their value on March 1, 1913, constituted invested capital, no part of which could be converted into income for taxation purposes in 1919, either by act of Congress or by department regulation. If, as a matter of fact, these policies on March 1, 1913, had an actual value in excess of the premiums which had been paid, this value, rather than the premiums paid, must be deducted from the sum received in 1919, in order to determine taxable gain.

The defendant advances the suggestion that, if the actual value of the policies as of March 1, 1913, is to be employed as the basis for determining the taxable gain realized upon surrender of the policies in 1919, then the only value which can be assigned to them as of March 1, 1913, would be their loan value or cash surrender value as of that date, shown by the schedule set out in the policies to be $37,300 each, or a total of $74,600. This contention is based upon the provision of the policies that the plaintiff was entitled to no accumulations on the policies, unless he lived out the 20-year accumulation period, which had not expired on March 1, 1913; that under the terms of the policies the insurance company was not required to, and as a matter of fact had not, prior to the end of the accumulation period, irrevocably set aside to these policies any part of the accumulations which would ultimately go to them, if the insured lived out the accumulation period; that therefore, inasmuch as the plaintiff could not sell his policies, and had no right to then claim the accumulations provisionally allotted to them, the only demonstrable value these policies had on March 1, 1913, was the scheduled loan value or surrender value thereof, which on that date was $37,300 each, or a total of $74,600.

It is true that the insurance company had not finally set aside to these policies any part of the accumulations which would ultimately belong to them, if the plaintiff lived out the accumulation period, nor did the plaintiff on that date have any present title to such accumulations. The record shows, however, that the company had year by year provisionally ascertained the amount of accumulations attributable to each of these policies, and the amount thus provisionally ascertained and set aside on March 1, 1913, was $6,800, or $13,600 for the two policies. The record also shows that it was known that the rate of accumulation during the last few years of the accumulation period would be greater than the earlier years, prior to 1913.

Of course, under the terms of the policies,

if the plaintiff had elected to surrender his policies in 1913 and claim his rights thereunder, he would have gotten no part of the accumulations; but I cannot accede to the contention that this fact fixed the value of the plaintiff's two contracts as of that date, either at their loan value or at the amount of the premiums which had been paid. The premiums had already been paid. There was no possibility of the policies lapsing for nonpayment of premiums. At the time they were issued the record shows that the plaintiff was a young man 24 years of age. In 1913 he was 38 years of age. The record fails to show that he had other than the average expectancy of life. According to the mortality table in common use in Kentucky, his expectation of life on March 1, 1913, was 26.91 years. In determining the value of his policies on March 1, 1913, it would not have been unreasonable for the plaintiff to have anticipated that he would live out the accumulation period, which had only 6 years 2 months and 18 days to run, and would thereby receive the special property rights in the contracts inuring to him at the end of the accumulation period. He could have ascertained that there had already been assigned to these two policies, provisionally, $13,600. He could have ascertained that the rate of accumulation for the remainder of the accumulation period would have been equal to, if not in excess of, what it had been in the past. If it had maintained the same ratio, however, for the last 6 years of the accumulation period which it had maintained for the first 14, he could reasonably have anticipated that the $13,600 provisionally set aside to the policies in 1913 would have grown to $19,428.57 at the end of the accumulation period on May 19, 1919.

An examination of the schedule of loan values demonstrates that on May 19, 1913, he could have collected as a loan or cash surrender value on each of these policies $39,700, or a total of $79,400. Of course, the plaintiff knew this on March 1, 1913. On that date he knew that, if he lived until the end of the year beginning May 19, 1914, he could have collected as cash surrender value on each of these policies $42,250, or a total of $84,500, and that, if he were living at the end of each subsequent policy year, his rights under the loan schedule were rapidly increasing in value. He also knew on March 1, 1913, that if he died in that year his estate would collect $57,000 on each of these policies, with a rapidly mounting scale of death values, should death occur in subsequent years and prior to May 19, 1919.

In view of these manifest benefits conferred by the policies, how can it be rationally contended that the only value of these insurance contracts on March 1, 1913, was the sum of the premiums paid, without interest, or the loan values assigned to them on that date? To reach any such conclusion would be to disregard the facts. It is, of course, true that on March 1, 1913, it was not certainly known that the plaintiff would live out the accumulation period. Yet this same character of uncertainty is encountered by the courts constantly in determining the value of life estates in property, particularly in the allotment of dower. It is true that there is no method by which the value of these policies can be ascertained with mathematical exactness as of March 1, 1913, but the plaintiff should not be made to bear the entire burden of this condition, when their value as of that date can be fairly approximated, and when it is clear that by the application of any fair standard of value they were worth in excess of the sum claimed by the Government.

Under all the circumstances, I think it is fair to both the government and the plaintiff to fix the value of these policies on March 1, 1913, at the then present value of what the plaintiff could at that date have reasonably anticipated they would have been worth on the 19th day of May, 1919, under the fourth option heretofore referred to, arriving at the then present value by the application of a 4 per cent. interest rate, compounded annually. As I have heretofore indicated, I think the plaintiff on March 1, 1913, could reasonably have anticipated that at the end of the accumulation period he would receive at least $19,428.57 of accumulations, and in addition thereto the face value of the policies, or a total of $119,428.57. The present value of this sum on March 1, 1913, at 4 per cent. interest, compounded annually, would be $93,587.81. This amount, I think, should be treated as the fair value of the plaintiff's two policy contracts on March 1, 1913. Deducting this sum from $120,797, the amount actually received by the plaintiff upon surrender of his policies at the end of the accumulation period, would result in a taxable gain of $27,209.19. Of this the sum of $20,797 was paid out of earned surplus, and is therefore taxable as dividends, while $6,412.19 thereof would be subject to both normal and surtax.

Counsel for plaintiff will prepare a judgment conforming to the views herein expressed, with a finding of facts as herein indicated, and as more fully stipulated in the record, and present same for entry.